**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| KY'TRIC SHROPSHIRE, | ) | CASE NO. 1:19-cv-01299 |
| | ) | |
| Petitioner, | ) | JUDGE DAN AARON POLSTER |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| ED SHELDON, Warden, | ) | |
| | ) | |
| Respondent. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

Petitioner, Ky'Tric Shropshire ("Petitioner" or "Shropshire"), challenges the

constitutionality of his conviction in the case of *State v. Shropshire*, Cuyahoga County Court of

Common Pleas Case No. CR-16-602693-C. Petitioner, represented by counsel, filed his Petition

for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (R. 1). Warden Ed Sheldon

("Respondent") filed his Answer/Return of Writ (R. 5), and Petitioner, through counsel, filed a

Traverse (R. 8), to which Respondent did not file a reply. This matter is before the undersigned

Magistrate Judge pursuant to Local Rule 72.2. For reasons set forth in detail below, it is

recommended that the habeas petition be DENIED.

## I. Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment

of a state court, factual determinations made by state courts are presumed correct. 28 U.S.C. §

2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012) ("State-court

factual findings are presumed correct unless rebutted by clear and convincing evidence."). The

Eighth District Court of Appeals ("state appellate court") summarized the facts underlying

Petitioner's conviction as follows:

{¶ 1} Defendant-appellant Ky'Tric Shropshire ("Shropshire"), along with codefendants Jamall Lewis ("Lewis") and Ramel Lee ("Lee"), was charged in January 2016 with several counts and specifications relating to the April 2013 death of Regina Neal ("Neal") and shooting of Charles Elder ("Elder").

{¶ 2} With the exception of the gang specifications and a charge of having weapons while under disability, Shropshire's case proceeded to a joint jury trial with Lewis's case. The jury found Shropshire guilty of aggravated murder, murder, attempted murder, and felonious assault, along with the relevant accompanying specifications; he was acquitted of one charge—discharge of a firearm on or near prohibited premises. The trial court found him guilty of the gang specifications and having weapons while under disability. The court sentenced Shropshire to life imprisonment with the possibility of parole after 25 years. The following facts were elicited at trial.

**Facts**

{¶ 3} The shooting and death that occurred in this case were the result of gang violence. The rival gangs at issue were the ATM Jack Boys and the J–Park gang. Elder, one of the victims, testified that a number of his friends are members of the ATM Jack Boys; he denied that he himself was involved in any gang.

{¶ 4} On the evening in question, Elder and the other victim, Neal, who was Elder's close friend, went for a walk; they were in an area considered to be ATM Jack Boys territory. Elder testified that both he and Neal were unarmed. As the two walked, Elder felt an impact that caused him to fall over, and then he heard a succession of rapid-fire shots. He had been shot in his calf.

{¶ 5} When the shooting stopped, Elder looked back and saw a male figure wearing a red hooded sweatshirt, with the hood drawn tight around his face so that only his nose and mouth were visible; he admitted that it was "kind of dark."

{¶ 6} Elder began crawling toward Neal's house, screaming for help. Two of his friends from the ATM Jack Boys, "Diaz" and Jermaine Cottrell, a.k.a. "Mane," came to his aid. Elder then saw the man with the red hooded sweatshirt drive by in a small white car. His friends called 911, and he was transported by ambulance to the hospital. Because of the gunshot injury, Elder was unable to walk for six months and has sustained permanent nerve damage in his leg.

{¶ 7} Elder described his assailant to the police as short and stocky, with a "big nose and big lips." He did not immediately provide the police with a suspect name, but when he did, he told them that he "felt like [he] did recognize" his shooter, and believed it may have been Jamall Lewis, Shropshire's codefendant. Lewis was a known member of the J–Park gang and had had a recent altercation

2

with Elder's brother.

{¶ 8} Approximately one month after the shooting, Elder applied for victim's compensation from the state. He indicated to the employee assisting him that he was not able to positively identify his assailant. The employee insisted that he put down a name on the form, so he listed Lewis. Prior to trial, Elder identified Lewis from a photo array; he identified him again at trial.

{¶ 9} As part of its investigation into the case, the Cleveland police learned the name of the owner of the white vehicle that Elder saw immediately after the shooting, but excluded the owner from involvement in the shooting. Also during their investigation, the police recovered 16 fired bullet shell casings from the area of the shooting, including shells from .40 caliber, .45 caliber, and 9mm weapons. They linked the .40 shell casings to a Taurus pistol that was seized during an arrest in Bedford Heights. The caliber of the pellet recovered from Neal's body could not be determined, however.

{¶ 10} The case went "cold," until March 2015, when a juvenile, S.L., who was under detention, came forward to cooperate with law enforcement officials. The police interviewed S.L. twice before taking a proffer statement from him on March 6, 2015. The police did not know that he was going to give information about the shooting in this case, and S.L. voluntarily brought it up. The state had not made S.L. any plea offer prior to his proffer. S.L. testified at trial, the substance of which was the same as his proffer, and was as follows.

{¶ 11} S.L. was a member of the J–Park gang. Earlier in the day of the shooting, while out walking, he had been the target of a drive-by shooting by whom he believed to be ATM Jack Boys gang member "Mane." So he met with other J–Park gang members Lewis, Shropshire, and Lee at Shropshire's house to plan revenge, which meant either fighting or shooting those they believed were responsible. They borrowed a silver SUV belonging to one of Shropshire's friends and headed to ATM Jack Boys territory; Lee was the driver. Lewis had a .40 caliber weapon and Shropshire had a .45 caliber weapon; S.L. and Lee were not armed. S.L. stated that Lee was wearing a red hooded sweatshirt, Lewis was wearing a gray hooded sweatshirt, and Shropshire was wearing a blue jacket.

{¶ 12} When the group arrived in ATM Jack Boys territory, they circled the area, looking for ATM Jack Boys gang members. They saw a small group of people standing outside and drove to and parked on the next street over so they could plan what they were going to do. They decided that Shropshire and Lewis would go to the small group they had just seen and do the shooting, and S.L. and Lee would remain in the car. Shropshire and Lewis then left the vehicle with their weapons; Shropshire had a .45 caliber weapon, and Lewis had a .40 caliber weapon.

3

{¶ 13} S.L. testified that moments after Shropshire and Lewis left the vehicle, he heard a succession of gunfire, approximating 20 shots in all, and then Shropshire and Lewis reappeared at the vehicle, with their weapons in hand. They quickly got inside the vehicle, and Lee sped away. He drove the group to Shropshire's house, where everyone quickly dispersed and went their separate ways. According to S.L., they did not talk about what had happened. S.L. testified that he learned a few days later through social media that Neal and Elder had been shot. He claimed that he did not know either one of them. S.L. further testified that Shropshire and Lewis got rid of the weapons, and that he (S.L.) later obtained the .45 firearm, which was "going around the neighborhood."

{¶ 14} As mentioned, at the time S.L. made his proffer, he was facing a mandatory bindover to adult court for an aggravated robbery charge with firearm and gang activity specifications. After his proffer, however, he entered into a plea agreement with the state and his case was not bound over to adult court. As part of the plea, he was placed at a boarding school for ten months. At the time of trial, he was still under probation and his testimony was part of his plea agreement.

{¶ 15} Colin Ginley ("Detective Ginley"), a detective with the Cleveland Police Department's Gang Impact Unit also testified at trial. Detective Ginley was the law enforcement official who interviewed S.L. twice before his proffer, and then took the proffer. The detective testified that the police do not make any guarantees to informants who come forth with information about a crime. Rather, they relay the information to the investigating detectives so that they can try to corroborate the information. If law enforcement is able to corroborate the information given by the informant, the state will consider that help when prosecuting the informant, and the information the informant provided cannot be used against him or her.

{¶ 16} Detective Ginley also testified as to the substance of S.L.'s proffer, including describing the earlier shooting and the planned revenge shooting in this case. He testified that police reports confirmed that there had been a shooting in the area around the time S.L. said. He further testified that S.L. told him that Shropshire and Lewis killed Regina Neal.

*State v. Shropshire*, 2017-Ohio-8308, 99 N.E.3d 980 (Ohio Ct. App. Oct. 26, 2017) (footnotes

omitted).

## II. Procedural History

### A. Conviction

During its January 2016 term, a Cuyahoga County Grand Jury issued an indictment

charging Shropshire, along with co-defendants Jamall Lewis and Ramel J. Lee, with one count of

aggravated murder (Count 1) in violation of O.R.C. § 2903.01(A); one count of murder (Count 2) in violation O.R.C. § 2903.02(B); two counts of felonious assault (Counts 3 and 5) in violation of O.R.C. § 2903.11(A)(1); one count of attempted murder (Count 4) in violation of O.R.C. § 2923.02 and § 2903.02(A); one count of felonious assault (Count 6) in violation of O.R.C. § 2903.11(A)(2); one count of discharge of firearm on or near prohibited premises (Count 7) in violation of O.R.C. § 2923.162(A)(3); and one count of having weapons under disability (Count 9i) in violation of O.R.C. § 2923.13(A)(2). (R. 5-1, Exh. 1).[1] Seven of the counts carried firearm specifications, six carried criminal gang activity specifications, and five carried notice of prior conviction specifications. *Id*. Shropshire, represented by counsel, entered a plea of not guilty to the charges. (R. 5-1, PageID# 107; Exh. 2).

Before trial, Shropshire elected to have the criminal gang activity specifications, notice of prior conviction specifications, and the weapons under disability charge tried to the bench. (R. 5-1, PageID# 108; Exh. 3). After a jury trial, except for a not guilty finding of discharge of a firearm on or near prohibited premises, Petitioner was found guilty as charged. (R. 5-1, PageID# 109; Exh. 4). The trial judge found Petitioner guilty of the remaining criminal gang activity specifications, notice of prior conviction specifications, and having weapons while under a disability. (R. 5-1, PageID# 110; Exh. 5).

At sentencing, the trial court merged Counts 1, 2 and 3, and the State elected to proceed for sentencing on the aggravated murder conviction, for which the court imposed a life sentence with parole eligibility after 25 years. (R. 5-1, PageID# 110; Exh. 5). The court imposed a three-year sentence for the firearm specification in Count 1, three years for the firearm specification in

---

[1] Count 8 charged Petitioner's co-defendant with having weapons under disability. (R. 5-1, Exh. 1).

Count 4, and three years for the criminal gang activity specifications, all to run consecutive to each other and to Count 1. *Id*. Counts 4 through 6 were also merged, and an eleven-year sentence was imposed concurrent to Count 1. *Id*. Finally, Petitioner was sentenced to thirty-six months on Count 9, also to be served concurrently to Count 1. *Id*.

**B.    Direct Appeal**

On July 25, 2016, Petitioner, through counsel, filed a notice of appeal with the state appellate court. (R. 5-1, PageID# 112; Exh. 6). On May 24, 2017, represented by current habeas counsel, James R. Willis, Petitioner filed a brief on the merits raising the following assignments of error:

1.    Rule 802, Ohio Rules of Evidence, augmented by the right of confrontation, was violated when the jury was allowed to consider as substantive proof certain hearsay evidence that was not admissible as proof of the matter asserted. With this being so, the court erred when it allowed the jury to consider this indisputable hearsay as substantive proof of guilt.

2.    The court committed egregiously prejudicial error when it allowed the State's "gang expert" to give overview testimony (descriptive of his investigation), which included asserted proof of the defendant's alleged involvement in "gang activity", where most of his testimony was not based on personal knowledge.

3.    The court erred and the Appellant's right of confrontation was violated in the wake of the court's admission of considerable hearsay testimony provided by the witness, Det. Ginley.

4.    Counsel for the state was guilty of misconduct, and the accused was denied a fair trial, when despite the fact that defense's objections were overruled, he asked a detective, who testified as an expert, certain questions that overstepped the bounds of propriety and fairness, and as such deprived the accused of a fair trial.

5.    A prosecutor is guilty of misconduct when, in the wake of allowing himself to become an unsworn witness, he expressly conveys to the jury his own personal opinion, and openly endorses the opinions of two (2) of the officers who investigated the case, that the accused was guilty as charged.

6.   Given the content of a written statement made by an admitted homicide accomplice, indeed after he was taken into custody (for a different offense), and which was given after a motive to falsify arose, is not admissible as substantive proof to rehabilitate the witness' credibility under the recent fabrication exception to the hearsay rule, it follows the admission of such proof in this case was indefensible.

7.   Given the fact that the various accusatorial statements directed at the accused, made by a witness, who admitted to being an accomplice in the homicide case then being tried, which statements were originally made after a motive to testify falsely arose, such statements were not admissible under the recent fabrication exception. So postured, the admission of such proof deprived the appellant of a fair trial.

(R. 5-1, PageID# 115; Exh. 7).

On October 26, 2017, the state appellate court overruled all of Shropshire's assignments of error and affirmed the judgment of the trial court. (R. 5-1, Exh. 10; *Shropshire*, 2017-Ohio-8308).

On December 28, 2017 Shropshire, through Attorney Willis, filed a notice of appeal along with a motion to file a delayed appeal with the Ohio Supreme Court. (R. 5-1, PageID# 206-211; Exhs. 11 & 12). The motion for delayed appeal was granted. (R. 5-1, PageID# 236; Exh. 13). In his Memorandum in Support of Jurisdiction, Petitioner set forth the following three propositions of law:

1.   For evidence to be admissible as a "prior consistent statement" (here related to a two-year-old unsolved murder), which was first revealed after the witness openly, and brazenly, sought a deal for himself in connection with charges for which he was then under arrest for, it must have been made before the declarant was motivated to do so for ulterior reasons.

2.   Rule 802, Ohio Rules of Evidence, augmented by the right of confrontation, was violated, when the jury was allowed to consider as substantive proof certain hearsay evidence provided them as proof of the matter asserted. With this being so, the court erred when it allowed the jury to consider this indisputably hearsay as substantive proof of guilt.

3.   Statements such as those made here that express the prosecutor's personal

7

> opinion (and that of his police officers) as to the guilt of the accused, are forbidden because they unfairly exploit his standing and the prestige of his office with the jury, and they imply he has other evidence outside of what the jury heard that supports his assertations [sic]. Indeed, when a prosecutor does this his summation, one would have to really strain to believe his intent was not to convey to the jury impermissible considerations.

(R. 5-1, Exh. 14).

On June 6, 2018, the Ohio Supreme Court declined to accept jurisdiction of the appeal pursuant to S. Ct. Prac. Rule 7.08(B)(4). (R. 5-1, PageID# 253; Exh. 13).

**C.  Federal Habeas Petition**

Petitioner, through counsel, filed the Petition for Writ of Habeas Corpus asserting the following grounds for relief:

> **GROUND ONE**: The Court erred and, consequently, denied Petitioner's due process rights when it allowed certain hearsay evidence to be admitted at Trial.

> **GROUND TWO**: The Court erred and, consequently, denied Petitioner's confrontation rights when it allowed certain hearsay evidence through witness Detective Ginley to be admitted at trial.

> **GROUND THREE**: Petitioner was denied a fair trial when the State unlawfully solicited expert testimony from the Detective.

> **GROUND FOUR**: Counsel for the State committed prosecutorial misconduct when he presented personally opinion testimony to bolster two (2) of its witnesses.

> **GROUND FIVE**: The Court erred in allowing the content of a written statement made by Petitioner's co-defendant while in custody, and after a motive to fabricate arose, to be admitted as rehabilitation evidence during Trial under the recent fabrication exception to hearsay.

> **GROUND SIX**: The Court erred and, consequently, denied Petitioner's confrontation rights when it allowed certain hearsay evidence related to the written statement made by Petitioner's co-defendant to be admitted at Trial.

(R. 1, PageID# 7-8).

### III. Exhaustion and Procedural Default

**A. Exhaustion Standard**

State prisoners must exhaust their state remedies before raising claims in federal habeas corpus proceedings. *See* 28 U.S.C. § 2254(b), (c). This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). However, if relief is no longer available in state court, exhaustion can be rendered moot: "If no remedy exists, and the substance of a claim has not been presented to the state courts, no exhaustion problem exists; rather, it is a problem of determining whether cause and prejudice exist to excuse the failure to present the claim in the state courts." *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994); *see also Buell v. Mitchell*, 274 F.3d 347, 349 (6th Cir. 2001) ("a petitioner cannot circumvent the exhaustion requirement by failing to comply with state procedural rules.") (citations omitted).

**B. Procedural Default Standard**

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice. *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (*citing Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)). A claim may become procedurally defaulted in two ways. *Id*. First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court. *Id.*; *see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate ground for precluding

relief, the claim is procedurally defaulted.[1] *Id.*

 Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999). If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted. *See, e.g.*, *Engle v. Isaac*, 456 U.S. 107, 125-130 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). This second type of procedural default is often confused with exhaustion. Exhaustion and procedural default, however, are distinct concepts. AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28. Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review. *Id.* In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal. *Id.* Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted. *Id.*

 A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim. *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue--not merely

---

[1] In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted. 785 F.2d at 135. Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an independent and adequate state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice." *Id.* at 138-39; *accord Barkley v. Konteh*, 240 F.Supp.2d 708 (N.D. Ohio 2002).

as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984). A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: "(1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law." *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003), *abrogated on other grounds as recognized in English v. Berghuis*, 529 Fed. App'x 734, 744-45 (6th Cir. Jul. 10, 2013).

A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error. *See Maupin*, 785 F.2d at 138-39. "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule." *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (*quoting Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error." *Id*. Where there is strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied. *See, e.g., United States v. Frady*, 456 U.S. 152, 172 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219-20 (6th Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994). Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different. *Mason v. Mitchell*, 320 F.3d 604, 617 (6th Cir. 2003).

Finally, a petitioner's procedural default may also be excused where a petitioner is actually innocent in order to prevent a "manifest injustice." *See Coleman*, 501 U.S. at 749-50.

Conclusory statements are not enough – a petitioner must "support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *accord Jones v. Bradshaw*, 489 F.Supp.2d 786, 807 (N.D. Ohio 2007) (Katz, J.)

**C. Application to the Present Petition**

 Respondent contends that Shropshire has procedurally defaulted his third, fourth, and sixth grounds for habeas relief due to the unexcused failure to fairly present them to the Ohio courts for a full round of direct review. (R. 5, PageID# 72-73). Petitioner, through counsel, filed a traverse, but it does not respond to Respondent's argument that a number of grounds for relief are defaulted.

  **1. Ground Three: Expert Testimony**

 Petitioner's third ground for relief, though not easy to decipher, contends that the prosecutor unlawfully elicited expert testimony from Detective Ginley concerning gang-related activity and thereby denied him a fair trial, and that the prosecutor presented testimony that appeared to be fabricated. (R. 1, PageID# 42-43). Respondent asserts that Shropshire failed to present this argument to the Ohio Supreme Court as a proposition of law. Therefore, Respondent asserts that this ground for relief is defaulted due to Shrophsire's failure to present it for one complete round of judicial review through the state's "ordinary appellate review procedures." (R. 5, PageID# 73, citing *Boerckel*, 526 U.S. at 847; *Caver v. Straub*, 349 F.3d 340, 346 (6th Cir. 2003)).

 Although Petitioner undoubtedly raised a similar argument on direct appeal before the state appellate court in his second assignment of error (R. 5-1, PageID# 115; Exh. 7), his brief

before the Ohio Supreme Court lacked such an argument. (R, 5-1, PageID# 237-252; Exh. 14).

Therein, Petitioner raised three propositions of law. *Id*. The first two propositions of law

revolved around Petitioner's contention that the trial court improperly admitted allegedly hearsay

testimony that also violated the Confrontation Clause—arguments addressed below. *Id*. at

PageID# 247-250. In the third proposition of law, Petitioner asserted that the prosecutor

improperly vouched for S.L. during closing arguments and that the detectives found S.L. to be

truthful as well. Petitioner's third ground for habeas relief, however, cannot fairly be

characterized as the same argument raised before the Supreme Court of Ohio simply because it

takes issue with different actions of the prosecutor.[2]

 The court finds ground three to be procedurally defaulted as it could have been raised on

direct appeal before the Ohio Supreme Court, but was not so raised. The Sixth Circuit has held

that proper exhaustion of a claim requires presenting the claim in state court under the same

theory in which it is later presented in federal court. *See Hicks v. Straub*, 377 F.3d 538, 552-53

(6th Cir. 2004) (holding that "the exhaustion doctrine requires the petitioner to present 'the same

claim under the same theory' to the state courts before raising it on federal habeas review")

(*quoting Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987); *accord Wong v. Money*, 142 F.3d

313, 322 (6th Cir. 1998)); *Zich v. Haviland*, No. 3:18CV02515, 2020 WL 7684940, at *25 (N.D.

Ohio Apr. 30, 2020), *report and recommendation adopted*, 2020 WL 7237289 (N.D. Ohio Dec.

---

[2] Petitioner is not proceeding *pro se*. Although it is "well settled that … 'inartfully pleaded,'
allegations in a *pro se* complaint are held to 'less stringent standards than formal pleadings
drafted by lawyers,'" the court declines to engage in active interpretation to create or develop
arguments not presented through counsel. *See, e.g., Haines v. Kerner*, 404 U.S. 519, 520 (1972);
*Reed v. Jenkins*, No. 3:15-CV-00620, 2016 WL 6311235, at *17 (N.D. Ohio June 22, 2016)
("Active interpretation, however, does not involve the Court assuming the role of counsel, not
even for a *pro se* habeas petitioner."), *report and recommendation adopted*, 2016 WL 6393350
(N.D. Ohio Oct. 27, 2016).

9, 2020) (Gwin, J.).

Moreover, any claims that Shropshire could have asserted in his direct appeal—and as referenced above, he in fact he did raise such a claim at the appellate level—are defaulted under Ohio's well-established doctrine of *res judicata*. *Coleman v. Mitchell*, 244 F.3d 533, 538 (6th Cir. 2001), *cert. denied*, 534 U.S. 977 (2001); *State v. Szefcyk*, 77 Ohio St.3d 93, 671 N.E.2d 233 (1996) (syllabus); *State v. Perry*, 10 Ohio St.2d 175, 176, 226 N.E.2d 104, 105-106 (1967) (syllabus, ¶9). Petitioner cannot return to state court to exhaust the claims because the Ohio Supreme Court has ruled that arguments that could have been raised in an initial appeal (and were not) will be barred from consideration on appeal following remand, under the doctrine of *res judicata*. *State v. Hutton*, 100 Ohio St.3d 176, 182, 797 N.E.2d 948, 956 (2003); *State v. Gillard*, 78 Ohio St.3d 548, 549, 679 N.E.2d 276 (1997), *cert. denied*, 523 U.S. 1108 (1998). Because Ohio law would not permit Shropshire to raise this particular claim, it is defaulted. *See Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006) ("In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal."); *Adams v. Bradshaw*, 484 F. Supp. 2d 753, 769 (N.D. Ohio 2007) ("In circumstances where the petitioner has failed to present a claim in state court, a habeas court may deem that claim procedurally defaulted because the Ohio state courts would no longer entertain the claim.")

Therefore, because Shropshire failed to present the same claim, before the state appellate court and Ohio Supreme Court on direct appeal, under the same theory that he now advances before this court on habeas review, that claim—Petitioner's third ground for relief—has been procedurally defaulted because Ohio courts would no longer consider it.

**2. Ground Four: Prosecutorial Misconduct**

In his second ground for relief, Petitioner maintains that the prosecutor engaged in misconduct during closing arguments when he opined that detectives Ginley and Entenok both found S.L.'s rendition of events credible. (R. 1, PageID# 44). Respondent asserts that the defense failed to object at trial to the prosecutor's comments that now serve as the basis for Shropshire's second ground for relief. (R. 5, PageID# 73-74). Therefore, Respondent argues that Petitioner has defaulted his fourth ground by failing to make a contemporaneous objection at trial—noting that Ohio has a long-standing and consistently enforced contemporaneous objection rule prohibiting the review of a claim that was not objected to at trial. *Id*. (citing *State v. Murphy*, 2001-Ohio-112, 747 N.E.2d 765 (Ohio 2001) ("The waiver rule requires that a party make a contemporaneous objection to alleged trial error in order to preserve that error for appellate review. The rule is of long standing, and it goes to the heart of an adversary system of justice.")).

The state appellate court addressed Petitioner's argument as follows:

{¶ 43} For his fourth and fifth assignments of error, Shropshire contends that the assistant prosecuting attorney engaged in misconduct *** by expressing his own personal opinion and endorsing the views of the investigating police officers in closing statements. For the reasons that follow, we find no merit to the claims.

{¶ 44} Prosecutorial misconduct is not grounds for reversal unless the defendant has been denied a fair trial due to the prosecutor's prejudicial remarks. *State v. Maurer*, 15 Ohio St.3d 239, 266, 473 N.E.2d 768 (1984). A reviewing court "will not deem a trial unfair if, in the context of the entire trial, it appears beyond a reasonable doubt that the jury would have found the defendant guilty even without the improper comments." *State v. Smith*, 12th Dist. Butler No. CA2007-05-133, 2008-Ohio-2499, 2008 WL 2168427, ¶ 9.

{¶ 45} Further, in regard to closing remarks, the prosecution is entitled to a degree of latitude. *State v. Smith*, 14 Ohio St.3d 13, 13–14, 470 N.E.2d 883 (1984). Prosecutorial misconduct will only be found where the prosecution's remarks made during closing argument were improper and those remarks prejudicially affected the substantial rights of the defendant. *State v. Elmore*, 111 Ohio St.3d 515, 2006-Ohio-6207, 857 N.E.2d 547, ¶62. Statements that may

"inflame the passions and prejudice of the jury" are deemed improper because they wrongly "invite the jury to judge the case upon standards or grounds other than" those upon which it is obligated to decide the case, namely, the law and the evidence. *State v. Cunningham*, 178 Ohio App.3d 558, 2008-Ohio-5164, 899 N.E.2d 171, ¶ 27 (2d Dist.), citing *State v. Draughn*, 76 Ohio App.3d 664, 671, 602 N.E.2d 790 (5th Dist. 1992). However, isolated comments by a prosecutor are not to be taken out of context and given their most damaging meaning. *State v. Hill*, 75 Ohio St.3d 195, 204, 661 N.E.2d 1068 (1996).

***

{¶ 47} Likewise, Shropshire's second allegation of prosecutorial misconduct—improper commentary during closing arguments—is without merit. **We initially note that the defense did not object to the alleged improper commentary. Failure to object waives all but plain error**. *State v. Davis*, 62 Ohio St.3d 326, 337, 581 N.E.2d 1362 (1991). "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

{¶ 48} The specific alleged improper comment was the assistant prosecuting attorney stating during closing argument that Detectives Ginley and Entenok found S.L. to be credible. The state, however, is "permitted to fairly comment on the credibility of witnesses based on the witnesses' testimony at trial." *State v. Price*, 60 Ohio St.2d 136, 140, 398 N.E.2d 772 (1979).

*Shropshire*, 99 N.E.3d at 988-989 (emphasis added). It is well established that "Ohio's contemporaneous objection rule is an adequate and independent state ground for barring habeas relief and that plain error review constitutes enforcement of the contemporaneous objection rule…." *Neil v. Forshey*, No. 20-3491, 2020 WL 6498732, 2020 U.S. App. LEXIS 34461, at *12 (6th Cir. Oct. 30, 2020) (further finding that "reasonable jurists would not disagree with the district court's determination that [a] claim was procedurally defaulted" based on the "contemporaneous objection rule.") (citing *Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir. 2011)).

Further, controlling precedent in the Sixth Circuit demonstrates an Ohio court's "plain error review does not constitute a waiver of the state's procedural default rules and resurrect the

16

issue for [a petitioner]." *Keith v. Mitchell*, 455 F.3d 662, 673-74 (6th Cir. 2006); *accord McNeill v. Bagley*, No. 1:02 CV 1645, 2019 U.S. Dist. LEXIS 144592, at *89 (N.D. Ohio Aug. 26, 2019) (Polster, J.). Consequently, the state courts actually enforced the state procedural rule against Shropshire by reviewing this issue only under the plain error standard. Therefore, the fourth ground for relief has been procedurally defaulted.

### 3. Ground Six: Confrontation Clause

With respect to the sixth ground for relief, Shropshire asserts his constitutional right to confront witnesses against him was violated by the admission of trial witness S.L.'s proffered statement. (R. 1, PageID# 48-49). Because the claim is based on allegations that can be determined by examination of the files and records in the case, Respondent asserts it should have been raised as an alleged federal constitutional violation on direct appeal. (R. 5, PageID# 74) (citations omitted). But Respondent argues that Shropshire raised this particular Confrontation Clause issue—regarding the admission of S.L.'s proffered statement—only as a state-law claim based upon a perceived violation of Ohio's evidentiary rules. *Id*. at PageID# 75.

This court, however, addresses ground six on the merits below. The United States Supreme Court has observed that federal courts are not required to address a procedural default issue before deciding against a petitioner on the merits. *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997). The Sixth Circuit has also approved this rule where the procedural default question is complicated and unnecessary to the court's determination of the case. *See Bales v. Bell*, 788 F.3d 568, 573 (6th Cir. 2015) (observing that judicial economy may favor addressing the merits rather than seeking to resolve complicated issues of state law).

### D. Grounds for Excusing Procedural Default

Because Petitioner has procedurally defaulted his third and fourth grounds for relief, he

may only avoid the default if he can demonstrate both cause *and* prejudice for his default. Petitioner, however, has failed to demonstrate "cause," which requires "something external to the petitioner, something that cannot fairly be attributed to him[;] . . . some objective factor external to the defense [that] impeded . . . efforts to comply with the State's procedural rule." *Coleman*, 501 U.S. at 753. *See also Franklin*, 434 F.3d at 417; *Maples v. Stegall*, 340 F.3d 433, 438 (6th Cir. 2003). In fact, as stated above, Petitioner's traverse, through counsel, fails to acknowledge the procedural default arguments raised by Respondent. As such, the traverse has not argued that cause *and* prejudice exist for excusing the default.

Furthermore, Petitioner has not presented this court with any new and reliable evidence (*i.e.* exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence that was not presented at trial) that could satisfy the aforementioned *Schlup* standard for showing that he is actually innocent. Therefore, it is recommended that grounds three and four of the petition be dismissed as procedurally defaulted and not addressed on the merits.

### IV.   Review on the Merits

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997). The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings of the United States Supreme Court. *See Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005). However, an explicit statement by the Supreme Court is not mandatory; rather, "the legal principles and standards flowing from [Supreme Court] precedent" also qualify as "clearly established law." *Ruimveld*, 404 F.3d at 1010 (*quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002)).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413. By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law. *Id.* at 410-12. "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006) (*citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

**A. Grounds One and Five: Admissibility of Evidence**

In ground one, Petitioner asserts that Ohio Rule of Evidence 802 was violated due to the admission of "certain hearsay evidence through witness Detective Ginley…." (R. 1, PageID# 7, 34-36).[3] Petitioner's argument continues from insisting that Det. Ginley's testimony improperly endorsed the testimony of the primary witness, S.L., to taking issue with the admission of a prior out-of-court written proffer statement by S.L. *Id*. In the fifth ground for relief, Petitioner takes issue with the admission of this prior written statement made by S.L.; and, as this court understands Petitioner's argument, insists that the state court erred by allowing an alleged hearsay statement under the "prior consistent statement" exception to the hearsay rules. (R. 1, PageID# 46-48).

Petitioner maintains that the admission of the proffer cannot be defended given S.L.'s motive to give false testimony. (R. 1, PageID# 47). Petitioner's arguments revolve around his belief that the witness, S.L., fabricated his testimony against Petitioner in order to avoid prison time on a different case. However, "28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983); *Neal v. Morris*, 972 F.2d 675, 679 (6th Cir. 1992) (observing that it is the role of the factfinder to weigh the probative value of the evidence and resolve any conflicts in the testimony); *accord Binford v. Sloan*, No. 1:19-CV-1039, 2020 WL 5802964, at *10 (N.D. Ohio Sept. 8, 2020) (habeas court does not reweigh evidence or redetermine credibility of witnesses), *report and recommendation adopted*,

---

[3] To the extent ground one presents a Confrontation Clause argument, that argument is addressed below in conjunction with Petitioner's other Confrontation Clause-related arguments.

2020 WL 5798006 (N.D. Ohio Sept. 29, 2020). Simply put, it is beyond the scope of this court's review to decide whether S.L.'s testimony or prior written statement was false.

In addressing Petitioner's similar claims raise on appeal, the state appellate court decided as follows:

{¶ 18} In the first, sixth, and seventh assignments of error, Shropshire challenges the admission of S.L.'s statements, both as written and testified to by Detective Ginley, as impermissible hearsay. The assignments will be considered together.

{¶ 19} We start by recognizing the well-established principle that the admission or exclusion of relevant evidence is a matter left to the sound discretion of the trial court. *State v. Sage*, 31 Ohio St.3d 173, 180, 510 N.E.2d 343 (1987). Absent an abuse of discretion resulting in material prejudice to the defendant, a reviewing court should be reluctant to interfere with a trial court's decision in this regard. *Id.*

{¶ 20} "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Evid.R. 801(C). Hearsay is generally not admissible unless it falls within one of the exceptions to the rule against hearsay. Evid.R. 802, 803, 804; *State v. Steffen*, 31 Ohio St.3d 111, 509 N.E.2d 383 (1987). Statements constitute hearsay only if they were offered to prove the truth of the matters asserted in those statements. If those statements were offered for some other purpose, they are not inadmissible hearsay. *State v. Davis*, 62 Ohio St.3d 326, 344, 581 N.E.2d 1362 (1991).

{¶ 21} Evid.R. 801(D)(1) deals with prior statements of a witness. The rule provides in pertinent part as follows:

(D) Statements which are not hearsay. A statement is not hearsay if:

(1) Prior statement by witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is * * *

(b) Consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive[.]

Evid.R. 801(D)(1)(b).

{¶ 22} The Staff Notes accompanying the Rule state the following:

There are three types of statements by a witness which may qualify as nonhearsay under this subdivision and may be admissible as non-hearsay to prove the matters asserted in such prior statements. The rule does not limit the use of such statements for either impeachment or rehabilitative purposes. The statements may be used as substantive evidence of the matters asserted. The three categories are (a) prior inconsistent statements of a witness if made under oath subject to cross-examination, (b) prior consistent statements offered to rebut charges of recent fabrication or improper motive, and (c) prior identification by a witness.

{¶ 23} Thus, a prior out-of-court statement by the same witness will not be considered hearsay if the "declarant testifies at trial or hearing and is subject to cross-examination concerning the statement," and the statement is "consistent with declarant's testimony and is offered to rebut an express or implied charge against declarant of recent fabrication or improper influence or motive." Evid.R. 801(D)(1); *State v. Pritchard*, 8th Dist. Cuyahoga No. 78497, 2001 WL 898427, *3 (Aug. 2, 2001).

{¶ 24} The Ohio Supreme Court addressed this issue in *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596. In *Lang*, the codefendant entered into a plea agreement under which he pled to lesser charges in exchange for truthful testimony against Lang. In its opening statement, the defense contended that the state would present statements of a person "with an interest in the case," and implied that the codefendant "had a motive to lie because of the favorable terms of his pretrial agreement." *Id*. at ¶ 108-109. The court held that the defense's contentions constituted "an allegation of recent fabrication that allowed the state to introduce the codefendant's prior consistent statements to rehabilitate his testimony." *Id*. at ¶ 110. The court further reasoned that admission of the codefendant's prior statements was proper because the statements were made prior to him entering into a plea agreement. *Id*. at ¶ 111.

{¶ 25} Here, the defense's attack on the credibility of the state's witnesses started in opening statements with suggestions to the jury to consider what S.L.'s motivations were for his proffer, and that his plea deal was "one of the sweetest deals that ever happened." The defense also referenced the many times S.L. had testified throughout various stages in the case and the differences in his testimony vis-a-vis his proffer. Moreover, the record demonstrates that when S.L. provided information about this case to the police he had not yet entered into a plea agreement with the state; it was made, therefore, before any offer of leniency.

{¶ 26} In regard to Detective Ginley's testimony, he was merely testifying as to what S.L. told him; his testimony was therefore cumulative to S.L.'s testimony. We are not persuaded by Shropshire's contention that having the detective testify to S.L.'s statements unfairly made them seem more credible. When a hearsay declarant is examined at trial "on the same matters as contained in impermissible

hearsay statements and where admission is essentially cumulative, such admission is harmless." *State v. Tucker*, 8th Dist. Cuyahoga No. 83419, 2004-Ohio-5380, 2004 WL 2251800, ¶ 78, citing *State v. Tomlinson*, 33 Ohio App.3d 278, 281, 515 N.E.2d 963 (12th Dist. 1986).

{¶ 27} Under this context, the trial court properly allowed the state to use S.L.'s prior consistent statements to oppose the attacks on his credibility. The first, sixth and seventh assignments of error are therefore overruled.

*Shropshire*, 99 N.E.3d at 985-988.

It is also beyond the scope of this court's review to decide whether the state court decided an issue of state law correctly. The Sixth Circuit Court of Appeals has explained as follows:

> [I]t is the state's prerogative to define what evidence is relevant to the case in the first place. *See Jackson v. Virginia*, 443 U.S. 307, 324 n. 16, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (recognizing "the power of the States to define criminal offenses"); *see also Montana v. Egelhoff*, 518 U.S. 37, 58, 116 S.Ct. 2013, 135 L.Ed.2d 361 (1996) (Ginsburg, J., concurring) ("States enjoy wide latitude in defining the elements of criminal offenses.") (citations omitted). Indeed, this Court 'must defer to a state court's interpretation of its own rules of evidence and procedure' when assessing a habeas petition. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988), *cert. denied*, 488 U.S. 1011, 109 S.Ct. 799, 102 L.Ed.2d 790 (1989) (citation omitted).

*Miskel v. Karnes*, 397 F.3d 446, 452-453 (6th Cir. 2005) (footnotes omitted). "An issue concerning the admissibility of evidence does not rise to a level of constitutional magnitude unless it can be viewed as so egregious that the petitioner was denied a fundamentally fair trial." *Brentlinger v. Sheldon*, No. 20-3838, 2020 WL 8415221, at *4 (6th Cir. Dec. 11, 2020) (citing *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004)); *Moreland v. Bradshaw*, 699 F.3d 908, 923 (6th Cir. 2012) ("In general, alleged errors in evidentiary rulings by state courts are not cognizable in federal habeas review.") (citations omitted).

As discussed below, S.L. did in fact testify at trial and was subject to cross-examination. Petitioner fails to cite any authority that a state court's decision, to treat a prior consistent statement as non-hearsay by an individual who testified at trial, is tantamount to a deprivation of

a fundamentally fair trial. Thus, any argument to the contrary is not well taken; and it is recommended that the first and fifth grounds for relief be denied as lacking in merit.

**B. Grounds One, Two and Six: Confrontation of Witnesses**

In his second ground for relief, Petitioner asserts that his Sixth Amendment right to confront any witnesses against him was violated. (R. 1, PageID# 37). However, the bulk of Petitioner's argument is rooted in Ohio's evidentiary rules. *Id*. at PageID# 37-41. That argument was addressed above. To the extent Petitioner contends that he was deprived of his right to confront witnesses when Det. Ginley testified concerning S.L.'s prior statement, such an argument lacks merit as explained below. In his sixth ground for relief, Petitioner contends that the admission of S.L.'s prior statements violated his right of confrontation. (R. 1, PageID# 48-49). In addition, as referenced *supra* when addressing Petitioner's first ground for relief, to the extent it raises a Confrontation Clause claim, it is considered together with the second and sixth grounds due to the overlapping nature of the claims.

The Confrontation Clause of the Sixth Amendment guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." This guarantee applies to both federal and state prosecutions. *See Pointer v. Texas*, 380 U.S. 400, 406 (1965). The Confrontation Clause bars the admission of "testimonial statements" made by persons who have not testified as witnesses at trial. *Crawford v. Washington*, 541 U.S. 36, 68-69 (2004); *Woods v. Etherton*, 136 S. Ct. 1149, 1152 (2016) ("the Confrontation Clause prohibits an out-of-court statement only if it is admitted for its truth."); *Haliym v. Mitchell*, 492 F.3d 680, 701 (6th Cir. 2007) ("The Confrontation Clause 'is a procedural rather than a substantive guarantee. It commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination.'") (quoting *Crawford*).

The state appellate court addressed Petitioner's Confrontation Clause arguments as follows:

{¶ 38} For his third assigned error, Shropshire contends that his right to confrontation was violated by Detective Ginley's testimony. The testimony Shropshire challenges is, again, the detective's testimony as to what S.L. told him. For the reasons that follow, we find that the testimony was permissible.

{¶ 39} The Sixth Amendment's Confrontation Clause states that "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." The United States Supreme Court has held that admission of out-of-court statements violates a defendant's right to confrontation when they are "testimonial and the defendant has had no opportunity to cross-examine the declarant." *Crawford v. Washington*, 541 U.S. 36, 52-53, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

{¶ 40} Although the Supreme Court did not define "testimonial" in *Crawford*, it did state that testimonial statements included those "that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Id*. at 52, 124 S.Ct. 1354; *see also State v. Arnold*, 126 Ohio St.3d 290, 294, 933 N.E.2d 775 (2010).

{¶ 41} Notwithstanding the above, even where an out-of-court statement is found to be testimonial, the Confrontation Clause is not violated so long as the "declarant testifies at trial." *State v. Keenan*, 81 Ohio St.3d 133, 142, 689 N.E.2d 929 (1998), citing *California v. Green*, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970). In *Keenan*, for example, the Ohio Supreme Court found that a detective's testimony about a witness's out-of-court statements made to him did not violate the Confrontation Clause because the witness testified at trial and was subject to cross-examination. *Id*. at 142, 689 N.E.2d 929.

{¶ 42} Here, although S.L.'s statements were probably testimonial in nature, he testified at trial and was subject to vigorous cross-examination about the exact nature of the statements contained in his proffer. On this record, therefore, Shropshire's right to confront S.L. was not violated. The third assignment of error is therefore overruled.

*Shropshire*, 99 N.E.3d at 988-989.

This court cannot find that the state appellate court unreasonably applied clearly established federal law, and the existing case law does not support Petitioner's argument. *See, e.g., California v. Green*, 399 U.S. 149, 158 (1970) (concluding that "that the Confrontation

Clause is not violated by admitting a declarant's out-of-court statements, as long as the declarant is testifying as a witness and subject to full and effective cross-examination."); *accord Currie v. Campbell*, No. 19-1411, 2019 WL 5173780, at *3 (6th Cir. July 10, 2019) (finding that because a witness made the challenged statements under oath at an investigative subpoena hearing and was subject to cross-examination at trial, the admission of the prior testimony did not violate the Confrontation Clause); *Levingston v. Warden, Warren Corr. Inst.*, 891 F.3d 251, 255 (6th Cir. 2018) (same); *Clement v. Kelly*, 642 F. App'x 498, 505 (6th Cir. 2016) (concluding that the admission of witness's prior sworn testimony did not present a Confrontation Clause problem under clearly established Supreme Court precedent because the witness was present at trial and cross-examined by defense counsel).

Here, Petitioner concedes that S.L. was "heavily cross-examined by the defense," and that defense counsel "assailed the State's arguments that bolstered the testimony of [S.L. whom Petitioner characterizes as an] admitted accomplice." (R. 1, PageID# 24, 46). This court cannot find that the state courts' adjudication of the Confrontation Clause issue was contrary to or involved an unreasonable application of clearly established federal law as set forth by the Supreme Court. Therefore, the admission of S.L.'s prior statement, whether introduced on its own or through Det. Ginley's testimony, fails to run afoul of the Confrontation Clause. The court recommends denying the second, sixth, as well as the Confrontation Clause claim in the first grounds for habeas relief, as meritless.

## V. Conclusion

For the foregoing reasons, it is recommended that Petitioner's Petition be DENIED.

s/ David A. Ruiz
United States Magistrate Judge

Date: January 18, 2022

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais,* 928 F.3d 520, 530-31 (6th Cir. 2019).**